UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE ARTHUR,

    Plaintiff,

v.

                                  Case No. 1:24-cv-105

DOUGLAS KRAUSE, et al.,

                                  Hon. Hala Y. Jarbou

    Defendants.
_____/

## **OPINION**

Plaintiff Danielle Arthur, a health care worker at Oaks Correctional Facility ("ECF"), filed this 42 U.S.C. § 1983 lawsuit against Douglas Krause (the Acting Deputy Warden) and John Does 1-5 (correctional officers working at ECF). (Am. Compl. ¶¶ 1-5, ECF No. 8; Defs.' Br. 6-7, ECF No. 11.) Arthur alleges that Defendants' conduct during a training exercise at ECF amounts to violations of the Fourth and Fourteenth Amendments. Before the Court is Krause's motion to dismiss (ECF No. 10), and Arthur's motion for leave to file a second amended complaint (ECF No. 38), which was filed on October 1, 2024. Defendants have yet to respond to Arthur's motion. For the reasons stated herein, the Court will grant Krause's motion to dismiss because Arthur fails to state a claim against Krause.

After reviewing Arthur's proposed second amended complaint, the Court determined that, even if it grants the motion for leave, Arthur's second amended complaint does not provide additional allegations or claims against Krause. The Court's analysis of Krause's motion to dismiss would not change. The Court will dismiss Krause as a defendant without ruling on the motion for leave to file a second amended complaint in order to give Defendants an opportunity to respond.

## I. BACKGROUND

On April 18, 2023, while working at ECF, Krause instructed Arthur that she would be playing the role of "hostage" in a training exercise. (Am. Compl. ¶ 9.) Arthur would pretend to be Krause's hostage for the exercise. Krause told Arthur to come to her supervisor (Brian Majerczyk)'s office to simulate the situation. (*Id.*) Once Arthur got to Majerczyk's office, Krause covered the window with a coat and closed the door. (*Id.* ¶ 11.) Upon Krause's instruction, Arthur and Majerczyk, who was also a "hostage" in this simulation, activated their personal protection devices to begin the exercise. (*Id.*) Responding to the protection devices, corrections officers reported to the area, but they did not yet enter the office where Arthur, Majerczyk, and Krause were located. (*Id.* ¶¶ 12, 15.) The officers "engaged in a role play" with Krause, simulating a hostage situation. (*Id.* ¶ 12.) Krause then let Majerczyk go, stating that it would allow him to "have some alone time with Danielle," referring to Arthur. (*Id.* ¶ 13.) Arthur interpreted Krause's unexpected comment as a "suggestion of sexual assault," which made her "feel unsafe." (*Id.* ¶ 14.) As Majerczyk opened the door to leave the office, "a squad of officers in riot gear . . . rushed in and tackled/pinned" Arthur, utilizing a "'common peroneal' strike . . . which is a strike to the outside of the leg above the knee to disable the target." (*Id.* ¶ 15.) Arthur alleges that "[D]efendants' complained-of actions were done deliberately, wantonly, sadistically, callously, purposely, knowingly, purposefully, intentionally, and with deliberate and/or callous indifference." (*Id.* ¶ 4.) Further, "[a common peroneal strike] could only be intended to injure the person upon whom it is being used." (*Id.* ¶ 16.) Arthur claims this exercise directly caused physical and emotional harm. (*Id.*)

Krause argues that the Court lacks jurisdiction over this suit, and that Arthur failed to state a claim. Krause also argues that even if the Court has jurisdiction, and Arthur stated a claim, he

is entitled to qualified immunity. The Court need not reach the question of qualified immunity for this motion to dismiss.

## II. STANDARD

### A. Motion to Dismiss

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## III. ANALYSIS

### A. Worker's Disability Compensation Act as Arthur's Exclusive Remedy

Krause claims that the Michigan Workers' Disability Compensation Act ("WDCA") prevents Arthur from bringing federal constitutional claims. He cites the statutory language that establishes the WDCA as the exclusive remedy for workplace injury. Mich. Comp. Laws §

418.131. However, while "Michigan has the right to declare that its workers' compensation system is the exclusive remedy under *state* law for workplace injuries . . . it cannot exclude the federal government from providing its own remedies so long as it acts within the scope of its enumerated powers." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 568 (6th Cir. 2013) (emphasis in original) (citing *Brown v. Cassens Transp. Co.*, 675 F.3d 946, 953-54 (6th Cir. 2012)). Generally, state worker compensation schemes that establish exclusive state remedies do not prevent plaintiffs from bringing federal civil rights claims. *Brown*, 675 F.3d at 953-54) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1105 (10th Cir. 1998) (holding that the Supremacy Clause barred Colorado's workers' compensation scheme from prohibiting civil rights claims)). A potential exception applies if a civil rights claim stems from the administration of the state's workers' compensation scheme. *Id.* at 954 (citing *Connolly v. Md. Cas. Co.*, 849 F.2d 525, 528 (11th Cir. 1988)). However, Arthur brings her civil rights claim under 42 U.S.C. § 1983, a federal statute providing for a right of action, and her claims are unrelated to worker's compensation. Therefore, the WDCA does not prevent Arthur from bringing her federal claims.

### B. Failure to State a Claim

Krause argues Arthur failed to state a claim under the Fourth or Fourteenth Amendments. The Court agrees with Krause, as discussed below.

#### 1. Fourth Amendment

Arthur brings Fourth Amendment claims under theories of unreasonable seizure and excessive force, alleging that "Defendants" (which presumably includes Krause) violated her "reasonable expectation [of privacy]" and "utilized an unlawful amount of force that exceeded any lawful, rational, or reasonable basis, even under the guise of it supposedly being a training exercise." (Compl. ¶¶ 18, 21.) The Fourth Amendment "'guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,'

without regard to whether the government actor is investigating crime or performing another function." *City of Ontario v. Quon*, 560 U.S. 746, 755-56 (2010) (quoting *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989)).

For a Fourth Amendment claim, the offending official's conduct must be intentional. *Stewart v. City of Middletown*, 136 F. App'x 881, 883 (6th Cir. 2005). To determine whether an officer used excessive force, the Court asks whether the officer's use of force was "objectively reasonable in light of the facts and circumstances confronting [them] without regards to [their] underlying intent or motivations." *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (internal quotation and citation omitted). Typically, the Court considers factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Here, there is no crime and no suspect. But "[t]he Fourth Amendment applies as well when the Government acts in its capacity as an employer." *Quon*, 560 U.S. at 756 (citing *Treasury Emps. v. Von Raab*, 489 U.S. 656, 665 (1989)). The Fourth Amendment protects government employees from unreasonable seizures in the workplace, *id.*, and "'seizures' can become 'unreasonable' under the Fourth Amendment if officers use excessive force to carry them out." *Gambrel v. Knox Cnty.*, 25 F.4th 391, 400 (6th Cir. 2022). Therefore, excessive force in the workplace can amount to an unreasonable seizure and a violation of the Fourth Amendment.

For § 1983 claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Arthur alleges that she "had a reasonable expectation that she would not be ordered to role-

play that she was a sexual hostage, and further that she would not be physically and ferociously attacked." (Am. Compl. ¶ 20.) Arthur alleges that one of the officers in riot gear used excessive force by deploying the common peroneal strike. She does not allege that Krause was personally involved in the physical attack, nor does she allege that her initial participation in the simulated hostage situation invaded her reasonable expectation of privacy. Thus, Arthur's only potential Fourth Amendment claim against Krause would be for his comment that implied "she was a sexual hostage." Krause's comment would need to amount to an unreasonable seizure.

"A seizure of a person does not need to take the form of 'physical force;' rather, it can be 'a "show of authority" that "in some way restrains the liberty" of a person.'" *Hopkins v. Nichols*, 37 F.4th 1110, 1115 (6th Cir. 2022) (internal punctuation omitted) (quoting *Torres v. Madrid*, 592 U.S. 306, 311 (2021)). "An initially consensual encounter . . . can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'" *Id.* (quoting *INS. v. Delgado*, 466 U.S. 210, 215 (1984)). "Ordinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement officials, but by the workers' voluntary obligations to their employers." *Delgado*, 466 U.S. at 218. If the conduct that allegedly amounts to a violation of the Fourth Amendment does not provide additional restriction on the employee's freedom to leave, there is no constitutional violation. *Id.* In other words, the official's actions would need to cause a reasonable person to believe they were less free to leave than they were before, given the previously existing restrictions imposed by the workplace activities they consented to.

As indicated above, Arthur does not allege that her general participation in the hostage simulation amounted to an unreasonable seizure; it was an initially consensual encounter. She

6

alleges that Krause's comment, that he wanted "some alone time with [her]," made her "feel unsafe," amounting to a Fourth Amendment violation. While injecting insinuations of sexual assault into the simulation and making Arthur feel unnecessarily unsafe in a training exercise is lamentable, it does not amount to a Fourth Amendment violation. Given Arthur's description of the simulation, her voluntary participation, and the case-by-case nature of Fourth Amendment claims, Krause's comment does not change the degree to which a reasonable person would believe they are free to leave the training exercise. Importantly, Arthur does not allege Krause sexually assaulted her during the exercise, nor that she—at any point—considered withdrawing her consent to participate.[1] Instead, Arthur alleges that the "sexual hostage" element of the simulation was unexpected, not that Krause's comment made her feel more restricted than before. Krause's comment did not increase the extent to which a reasonable person in Arthur's position would feel unable to leave the simulation. Therefore, Arthur does not state a Fourth Amendment claim against Krause.

### 2. Fourteenth Amendment

Arthur brings her Fourteenth Amendment claim alleging that Krause's conduct amounts to a violation of substantive due process. (Am. Compl. ¶ 24.) "Substantive due process is the doctrine that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed." *Prado v. Thomas*, 804 F. App'x 332, 343 (6th Cir. 2020) (internal punctuation omitted) (quoting *Range v. Douglas*, 763 F.3d 573, 588

---

[1] Sexual assault may be a sufficient condition to make a reasonable person feel more restricted in the workplace, but it is not a necessary one. An employee need not allege sexual assault to make a Fourth Amendment claim for unreasonable seizure in the workplace. However, here, Arthur does not allege that Krause's conduct was a threat of, or the beginning of, any sexual assault or harassment, nor does she allege the comment made her feel as though she was unable to leave the situation. Nothing in this opinion is construed as placing any additional restrictions on an individual's right to withdraw consent in the Fourth Amendment context, or generally as it relates to workplace activity.

(6th Cir. 2014)). "It protects a narrow class of interests enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Id.* (internal quotations omitted) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)).

Arthur claims Krause's conduct (presumably his comment that insinuated a sexual hostage situation) "shocks the conscience" by depriving "Arthur of her substantive due process rights to freedom and liberty." (Am. Compl. ¶ 25.) For substantive due process claims, the Court must first provide a "careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Second, the Court must determine whether the liberty interest is "objectively, deeply rooted in this Nation's history and tradition." *Id.*

Arthur's liberty interest must be defined with more specificity than the general right to freedom and liberty.[2] Given the allegations, for a substantive due process claim against Krause, Arthur's liberty interest can best be described as the right to feel safe at work.[3] To succeed in a substantive due process claim, Arthur's right to feel safe at work must be deeply rooted in the history and tradition of our nation, and Krause's conduct that violated this right must "shock the conscience." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

---

[2] In *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the Supreme Court instructed courts to refine broad claims of a right to "liberty" down to the precise conduct in question. For conduct that was once analyzed under a broad right to liberty, the Court must now determine whether the party has a right to the specific conduct in question, determined by whether a right to the specific conduct is rooted in our nation's history and tradition. *Id.* at 240, 240 n.22 (framing the question not as whether there exists a right to liberty or privacy, but whether the right to an abortion is deeply rooted in the history and tradition of our nation).

[3] While federal courts have recognized a "right to life and safety through personal security [as a] fundamental interest . . . protected by the substantive portion of the Due Process Clause," *Lipman v. Budish*, 974 F.3d 726, 741 (6th Cir. 2020) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982)), this right applies to physical invasions of a person's body. *Ingraham v. Wright*, 430 U.S. 651, 673 n.42 (1977) (collecting cases). Arthur's allegations against Krause do not implicate this right.

The Supreme Court has already determined that "[n]either the text nor the history of the Due Process Clause supports [the] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). Even if framed as Arthur's right to be free from certain language in the workplace, that would not constitute a claim either. "Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corrs.*, 499 F. App'x 453, 455 (6th Cir. 2012). Arthur does not state a Fourteenth Amendment claim against Krause.

## IV. CONCLUSION

Arthur fails to properly state a claim against Krause. Krause's comment, while seemingly improper and hurtful, did not constitute an unreasonable seizure under the Fourth Amendment nor a violation of substantive due process under the Fourteenth Amendment. Accordingly, Krause's motion to dismiss will be granted. Krause will be dismissed as a defendant. Arthur's claims against the correctional officers (currently John Does 1-5) remain.

The Court will enter an order consistent with this Opinion.

Dated: October 8, 2024         /s/ Hala Y. Jarbou
                               HALA Y. JARBOU
                               CHIEF UNITED STATES DISTRICT JUDGE