UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIELLE ARTHUR,

    Plaintiff,

v.

DOUGLAS KRAUSE, et al.,

    Defendants.
_____/

Case No. 1:24-cv-105

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Danielle Arthur, a health care worker at Oaks Correctional Facility (ECF), originally filed this 42 U.S.C. § 1983 lawsuit against Acting Deputy Warden Douglas Krause and five unnamed Corrections Officers. (Compl., ECF No. 1.) Arthur seeks compensatory and punitive damages. (*Id.*, PageID.211.) After Arthur filed a first amended complaint (ECF No. 8), Defendant Krause filed a motion to dismiss (ECF No. 10). Arthur then filed a motion for leave to file a second amended complaint (ECF No. 38), but she expressed that the purpose of this amendment was just to add the names of the corrections officers and clarify the allegations against them. (Reply to Resp. to Pl.'s Mot. for Leave to File Second Am. Compl. 2 & n.1, ECF No. 43 (clarifying that "these other new proposed defendants are the ones who decided to physically attack [Arthur]" and "[o]bviously . . . Plaintiff will remove Krause from her Second Amended Complaint").) The Court granted Krause's motion to dismiss (ECF No. 41) and Arthur's motion for leave to file a second amended complaint (ECF No. 45).

With the procedural dust settled, Arthur's remaining claims are against five ECF corrections officers: John Farago, Connor Ison, Jared Revolt, Nolan Vanderwheele, and Nicholas

Wemple. (Second Am. Compl. ¶¶ 2-3, 12, ECF No. 46.) Arthur alleges that Defendants' conduct during a training exercise at ECF violated the Fourth and Fourteenth Amendments. Before the Court is Defendants' motion to dismiss (ECF No. 61) and Defendants' motion to stay discovery (ECF No. 72). For the reasons stated herein, the Court will deny both motions.

## I. BACKGROUND

On April 18, 2023, while working at ECF, Krause instructed Arthur that she would be playing the role of "hostage" in a training exercise. (Second Am. Compl. ¶ 9.) Krause told Arthur to come to her supervisor Brian Majerczyk's office to simulate the situation. (*Id.*) Once Arthur got to Majerczyk's office, Krause covered the window with a coat and closed the door. (*Id.* ¶ 11.) Upon Krause's instruction, Arthur and Majerczyk, who was also a "hostage" in this simulation, activated their personal protection devices to begin the exercise. (*Id.*) Responding to the protection devices, Defendants reported to the area, but they did not yet enter the office where Arthur, Majerczyk, and Krause were located. (*Id.* ¶¶ 12, 15.) The officers "engaged in a role play" with Krause, simulating a hostage situation. (*Id.* ¶ 12.) As part of the exercise, Krause let Majerczyk go but kept Arthur as a "hostage." (*Id.* ¶ 13.) When Majerczyk opened the door to leave the office, Defendants "all rushed in and tackled/pinned" Arthur, utilizing a "'common peroneal' strike . . . which is a strike to the outside of the leg above the knee to disable the target."[1] (*Id.* ¶ 15.) Arthur alleges that "[D]efendants' complained-of actions were done deliberately, wantonly, sadistically, callously, purposely, knowingly, purposefully, intentionally, and with deliberate and/or callous indifference." (*Id.* ¶ 4.) Further, "[a common peroneal strike] could only be intended to injure the person upon whom it is being used." (*Id.* ¶ 16.) Arthur claims that "[e]ven

---

[1] Given Arthur's clarification in her motion for leave to file a second amended complaint that only "the new proposed defendants are the ones who decided to physically attack [Arthur]" and "[o]bviously . . . Plaintiff will remove Krause from her Second Amended Complaint" (ECF No. 43), the Court does not consider this as a new allegation against Krause.

2

without the common peroneal strike, the force used on Ms. Ar[th]ur was unreasonably excessive and served no legitimate purpose." (*Id.* ¶ 17.)  She alleges that this exercise directly caused physical and emotional harm.  (*Id.* ¶¶ 16, 18.)

Defendants argue that Arthur failed to state a claim under the Fourth and Fourteenth Amendments.  Additionally, Defendants contend that even if Arthur stated a claim upon which relief could be granted, Defendants are entitled to qualified immunity.

## II. STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

3

### III. ANALYSIS

#### A. Failure to State a Claim

Defendants argue Arthur failed to state a claim under 42 U.S.C. § 1893 for Fourth and Fourteenth Amendment violations. The Court disagrees with Defendants, as discussed below.

##### 1. Defendants Acting Under Color of State Law

Before reaching the substantive elements of Arthur's constitutional claims, the Court will address Defendants' preliminary argument that suggests correctional officers engaged in a training exercise are not taking action under the color of state law and therefore cannot be held liable under section 1983.

"Courts do not ordinarily pause to consider whether § 1983 applies to the actions of police officers, public schools, or prison officials." *Lindke v. Freed*, 601 U.S. 187, 195 (2024). The Court will only pause here to address Defendants' novel take on state action that insinuates state officials, acting within the scope of their employment, at the direction of state-actor supervisors, are nonetheless not acting under the color of state law. Defendants argue—without citing caselaw—that because this was a training exercise, they were not acting under the color of state law. The argument is unpersuasive.

When a state official is engaged in "state-assigned responsibilities" that "meaningfully relate[] to the official's governmental status or the performance of his duties," he is acting under the color of state law. *Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) (cleaned up) (internal citations omitted). When the State has "tasked the employee with engaging in the specific conduct at issue," they act under the color of state law. *Id.* That conduct is precisely what Defendants engaged in. Arthur alleges that the training exercise was set up by ECF, and Defendants were acting according to their responsibilities at ECF. (Second Am. Compl. ¶¶ 3, 9-10, 15.) The

4

training exercise was a state-assigned responsibility meaningfully related to Defendants' duties as correctional officers.

Defendants argue that because this was a training exercise, they did not use coercive state power and therefore could not have acted under the color of state law. But in making that argument, Defendants improperly narrow the conduct to which section 1983 applies. Defendants were performing their official duties—which they could only do because of their status as officers of the state—in the workplace; this conduct constitutes acting under the color of state law. *Cassady v. Tackett*, 938 F.2d 693, 695 (6th Cir. 1991).

If Defendants enrolled in a training for personal pursuits, and Defendants were off duty, this would be a different case. *See Newell v. Huepenbecker*, 814 F. App'x 114, 117 (6th Cir. 2020) (off-duty officer who accidentally shot patrons of a shooting range during firearms training was not acting under the color of state law because his "status as a government official played no role whatsoever in the events giving rise to the lawsuit," and "[h]e had enrolled in the firearms course as a private citizen and was advancing his own interests at his own expense"). However, because Defendants' alleged conduct fulfilled a duty and responsibility of their employment through the state, Defendants were acting under the color of state law.

### 2. Fourth Amendment

Arthur brings a Fourth Amendment claim under the theory of excessive force, alleging that "Defendants utilized an unlawful amount of force that exceeded any lawful, rational, or reasonable basis, even under the guise of it supposedly being a training exercise." (Second Am. Compl. ¶ 20.) She claims that "[t]he defendants' herein-complained-of acts were arbitrary and invasive." (*Id.* ¶ 23.)

The Fourth Amendment "'guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,' without regard to whether the

5

government actor is investigating crime or performing another function." *City of Ontario v. Quon*, 560 U.S. 746, 755-56 (2010) (quoting *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989)). The Court first asks whether a search or seizure occurred, then whether that search or seizure was unreasonable. *Graves v. Mahoning County*, 821 F.3d 772, 775 (6th Cir. 2016) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

"The Fourth Amendment applies . . . when the Government acts in its capacity as an employer"; however, the Court adjusts the seizure analysis to accommodate the employer-employee relationship. *Quon*, 560 U.S. at 756 (citing *Treasury Emps. v. Von Raab*, 489 U.S. 656, 665 (1989)). A seizure occurs when a government official restrains a person's freedom of movement. *Brendlin v. California*, 551 U.S. 249, 254 (2007). But "[o]rdinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement officials, but by the workers' voluntary obligations to their employers." *INS v. Delgado*, 466 U.S. 210, 218 (1984). In other words, employees consent to some restrictions on their freedom of movement by virtue of agreeing to their workplace responsibilities and policies.

However, "[a]n initially consensual encounter . . . can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave.'" *Hopkins v. Nichols*, 37 F.4th 1110, 1115 (6th Cir. 2022) (quoting *Delgado*, 466 U.S. at 215). This concept translates to the government employer context: if a government employer imposes additional restrictions on an employee's freedom to leave—beyond what that employee has consented to as part of their workplace responsibilities—a seizure has occurred. *Delgado*, 466 U.S. at 218, 220-21; *see also Crochran ex rel. Shields v. Columbus City Schs.*, 748 F. App'x 682, 685 (6th Cir. 2018) (extending the same logic to the school setting by holding that a "seizure in

6

the school context" requires a "limitation on the student's freedom of movement [to] significantly exceed that inherent in every-day, compulsory attendance").

Arthur claims that even though she initially consented to participate in this training exercise, Defendants' conduct—specifically, the force used on Arthur—exceeded that consent, becoming an unreasonable seizure under the Fourth Amendment. Arthur alleges that the manner in which Defendants tackled/pinned her exceeded her consent and restrained her freedom of movement beyond typical workplace responsibilities, even in light of her role in the training exercise. She also alleges that Defendants' conduct was intentional (Second Am. Compl. ¶ 4), a requisite for a Fourth Amendment violation. *Stewart v. City of Middletown*, 136 F. App'x 881, 883 (6th Cir. 2005). These allegations establish a seizure.[2]

She then claims that this seizure was unreasonable due to excessive force. It is well established that "'seizures' can become 'unreasonable' under the Fourth Amendment if officers use excessive force to carry them out." *Gambrel v. Knox County*, 25 F.4th 391, 400 (6th Cir. 2022). For section 1983 claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. She claims that Defendants "*all* rushed in and tackled/pinned [her], including the utilization of a 'common peroneal' strike."[3] (Second Am. Compl. ¶ 15 (emphasis added).) Because the Court is required to "accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff," *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006), the Court interprets the complaint as alleging each defendant was involved in the

---

[2] The Court's opinion is specific to Arthur's circumstances. An individual playing a different role in a different training exercise may have consented to certain physical force (i.e. an individual simulating the role of an active shooter in an active shooter training may consent to certain force). But, here, Arthur claims that she did not consent to this restriction on her freedom of movement and it was not part of her workplace responsibilities.

[3] Defendants argue that it would have been impossible to deliver a peroneal strike in these circumstances, but it would be inappropriate to resolve this factual dispute at the motion to dismiss stage.

tackling/pinning. Given Arthur's allegations, this tackling/pinning—even without the use of a common peroneal strike—constituted unwarranted, unconsented to, and harmful force. (Second Am. Compl. ¶¶ 17-18.)

To determine whether Defendants' alleged conduct amounts to excessive force, the Court asks whether Defendants' tackling/pinning was "objectively reasonable in light of the facts and circumstances confronting [them] without regards to [their] underlying intent or motivations." *Kent v. Oakland County*, 810 F.3d 384, 390 (6th Cir. 2016) (internal quotation and citation omitted). Typically, the Court considers factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Here, there is no crime and no suspect, but officers cannot use excessive force in any seizure of a free person. *Graham*, 490 U.S. at 395 (clarifying that excessive force claims can apply to all law enforcements seizures of free citizens, not just arrests and investigatory stops). The analysis instead turns on whether Defendants' tackling/pinning of Arthur was objectively reasonable given the circumstances.

Arthur appears to allege that all defendants tackled/pinned her. At least one of the defendants used the common peroneal strike during the takedown.[4] A peroneal strike is violent force that officers cannot use on an individual that poses no threat to themselves or others. *Stanfield v. City of Lima*, 727 F. App'x 841, 850-51 (6th Cir. 2018) (citing *Harris v. City of*

---

[4] As discussed above, these are the facts Arthur alleges according to the Court's required liberal construction of the amended complaint. It is worth noting, though, that the language of the allegations lacks some clarity (i.e. Arthur does not describe the tackling/pinning, or the amount of force used) and the timeline of events is far from definite (was the common peroneal strike part of the tackling/pinning or performed after she was subdued?). However inartful the pleading may be, it has alleged these facts.

8

*Circleville*, 583 F.3d 356, 367 (6th Cir. 2009)). But even without the common peroneal strike, Arthur alleges all defendants violently took her down in a manner that caused injuries. Officers may not subdue a non-violent, non-threatening individual with physical force. *Smith v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) (per curiam). Arthur claims that Defendants subdued her with physical force even though she posed no threat to the officers or herself. Therefore, Arthur has properly alleged a claim for excessive force.

### 3. Fourteenth Amendment

Arthur also alleges Defendants' conduct amounts to a violation of her substantive due process rights. (Second Am. Compl. 26.) However, "the substantive due process framework is inappropriate where another constitutional amendment encompasses the rights asserted." *Partin v. Davis*, 675 F. App'x 575, 581 (6th Cir. 2017) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Excessive force claims during the "'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'" *Graham*, 490 U.S. at 395. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* Thus, Arthur has failed to state a claim under the Fourteenth Amendment.

### B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Arthur's Fourth Amendment claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

9

(1982)). Thus, Arthur must show (1) that Defendants violated her constitutional rights, and (2) "that the 'contours of the right' were sufficiently clear that 'a reasonable official in [Defendants'] position should have known his conduct violated that right.'" *Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir. 2025) (quoting *Ramsey v. Rivard*, 110 F.4th 860, 866 (6th Cir. 2024)).

The Court has already analyzed the first factor of the qualified immunity analysis. As indicated above, Arthur has properly alleged a violation of her Fourth Amendment rights. The Fourth Amendment applies to government employers in the workplace. The amended complaint, accepted as true, indicates each defendants' conduct restricted Arthur's movement beyond her workplace responsibilities and beyond her consent. Arthur alleges that her participation in the exercise did not anticipate the extent of Defendants' violent conduct. The amended complaint properly alleges that Defendants engaged in an unreasonable seizure and used excessive force on Arthur in this training exercise.

The Court must next determine whether Arthur's Fourth Amendment right to be free from excessive force was clearly established such that Defendants should have known their conduct was unconstitutional. "[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."[5] *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). The reasoning for that "preference is straightforward: [a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is

---

[5] While sovereign immunity is a jurisdictional issue appropriate for a Rule 12(b)(1) analysis, Defendants incorrectly assert that qualified immunity is treated the same. Qualified immunity is not jurisdictional; it is evaluated under 12(b)(6). *See Cooperrider*, 127 F.4th at 1036 (evaluating a qualified immunity defense under Rule 12(b)(6)).

clearly established." *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (cleaned up) (internal citation omitted).

With all inferences in her favor, Arthur has met her burden. It is clearly established that the Fourth Amendment applies in the workplace. *Delgado*, 466 U.S. at 218, 220-21. And binding precedent indicates it is clearly established that officials should not use physical force to subdue a non-violent and non-threatening individual. *Smith*, 874 F.3d at 945. These Fourth Amendment principles apply when government officials seize a free person, not just when they are investigating crimes or arresting an individual. *Graham*, 490 U.S. at 395. Arthur alleges that she was a non-violent and non-threatening individual. Further, according to the complaint, all defendants used violent physical force to seize and subdue Arthur. Thus, Defendants' conduct violates Arthur's clearly established constitutional right. Factual development may help answer questions that the liberal, deferential construction of the operative complaint leaves unanswered, but at this stage, Arthur has met her burden to defeat the qualified immunity defense.

Defendants argue that the nature of the training exercise presents a novel application of excessive force. They suggest that because the Court of Appeals has not yet held excessive force claims can apply in the workplace, the right to be free from it is not clearly established. The Court disagrees. A reasonable officer would know not to use physical force to subdue an individual who poses no threat, regardless of the workplace setting. And while the Court should refrain from defining rights "at a high level of generality," *Ashcroft*, 563 U.S. at 742, the clearly established contours of the right encompass Defendants' conduct. *Smith*, 874 F.3d at 945. Not only was this a training exercise—where Defendants would know that no individuals posed a threat—Arthur was the simulated hostage. Reasonable officers would know not to use this type of force on a person such as Arthur.

This principle is well-settled and clearly established; when a reasonable officer should know that a specific type of force would be excessive on a non-threating individual, they are not entitled to qualified immunity.  "There need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair wanting' that their actions were unconstitutional."  *Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (cleaned up) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)).  Officers cannot use excessive force when they seize a free citizen.  *Graham*, 490 U.S. at 395.  Physical violence to subdue a non-threatening and non-violent individual is excessive force.  *Smith*, 874 F.3d at 945.  Here, the setting of the altercation does not provide sufficient factual variance to warrant qualified immunity.[6]  Thus, the novel setting of a training exercise does not undermine the clearly established contours of this right.  Defendants are not entitled to qualified immunity at this stage.

**C. Motion to Stay Discovery**

Defendants also filed a motion to stay discovery.  Defendants argue that because they have raised a qualified immunity defense, the Court should stay discovery.  Defendants argue that qualified immunity shields them from discovery.  Because the Court has determined that—at this stage—Defendants are not entitled to qualified immunity, discovery shall proceed.

---

[6] In *Moore v. Oakland County*, 126 F.4th 1163 (6th Cir. 2025), the Court of Appeals discussed the right to be free from excessive force, illustrating which contours of that right are clearly established. *Id.* at 1168.  The Court of Appeals noted that since *Smith* in 2017, it has been clearly established that officers may not use physical force to subdue a non-violent and non-threating individual; the analysis turns on the amount of force used in relation to the threat of the apprehended individual, not the setting in which the apprehension takes place.  *Id.* ("[T]he reasonableness of an officer's actions turns on the severity of the crime at issue, the threat to police or public safety, and the resistance or not of the suspect.") (citing *Smith*, 874 F.3d at 945).

## IV. CONCLUSION

Arthur properly states a Fourth Amendment claim against Defendants. According to the amended complaint, Defendants' conduct during the training exercise amounts to a seizure, and Defendants used excessive force. The contours of this right are clearly established, and Defendants conduct falls within those boundaries. Accordingly, Defendants' motion to dismiss will be denied. Defendants' motion to stay discovery will be denied as well, as Defendants are not entitled to qualified immunity at this stage of the proceedings.

The Court will enter an order consistent with this Opinion.


Dated: March 17, 2025              /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE